**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11cv3-V-2
(5:07cr11-V-4)**

JASON WARD NORMAN,       )
                                      )
      Petitioner,           )
                                      )
         v.               )          **O R D E R**
                                      )
UNITED STATES OF AMERICA,  )
                                      )
      Respondent.       )
_____)

      **THIS MATTER** is before the Court on an initial review of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, filed January 6, 2011 (Doc. No. 1).

## I. FACTUAL AND PROCEDURAL HISTORY

      On February 28, 2007, the Government filed a Bill of Indictment charging Petitioner and three other persons with conspiring -- from in or about January 2001 until the date on which the Indictment was filed -- to possess with intent to distribute five kilograms or more of powder cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841-(b)(1)(A) (Count One); and with possessing a quantity of cocaine base with intent to distribute that substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Four).  (Criminal Case No. 5:07cr11, Doc. No. 3).

      On September 10, 2008, Petitioner appeared with counsel before the Court and entered "straight up" guilty pleas to the two charges from the Indictment.  On that occasion, the Court engaged Petitioner in its standard, lengthy colloquy to ensure that his pleas were being freely and

intelligently tendered. (Id., Doc. No. 108). Petitioner's responses to the Court's numerous questions established that he knowingly and voluntarily was tendering his pleas. (Id., Doc. Nos. 108 and 125). Consequently, after considering all of Petitioner's answers, the Court accepted his pleas. (Id.).

On December 24, 2008, the United States Probation Office filed the final copy of Petitioner's Pre-Sentence Report. (Id., Doc. No. 115). Such Report indicated, based upon information from the Government's file, including reports of interviews with Petitioner's co-defendants and co-conspirators, that during the relevant period, Petitioner trafficked in 3.86 kilograms of cocaine base and 2.24 kilograms of cocaine powder. (Id., at 8). The Report further noted that Petitioner's total offense level was 33, his criminal history category was III and his advisory range of imprisonment under the U.S. Sentencing Guidelines was 168 to 210 months (Id. at 9, 16 and 20). Petitioner objected to those calculations on the grounds that he did not traffic in the quantities of drugs that were attributed to him, and he did not conduct drug deals with all of the persons who were identified by the Report. (Id. at 24-25).

On February 9, 2009, Petitioner and counsel appeared in Court for his Factual Basis and Sentencing Hearing. At the outset of that proceeding, the Court asked Petitioner several questions, in response to which he reaffirmed that he understood the nature of the charges to which he was pleading and their corresponding penalties. (Transcript of Sentencing Hearing, filed April 16, 2009 at 4, hereinafter "Sent'g. Tr."). Petitioner further indicated his belief that he had been suitably advised by his attorney; that he was freely and voluntarily pleading guilty; and that he was guilty of the subject offenses. (Sent'g. Tr. at 5). After confirming that Petitioner had carefully reviewed the Report with counsel and after receiving defense counsel's stipulation to the existence of an independent factual basis to support Petitioner's pleas, the Court entertained

Petitioner's objections to the Report's calculations. (Sent'g. Tr. at 5-6). Specifically, Petitioner challenged the quantities of drugs that were attributed to him.

To support those calculations, the Government called the case agent as a witness. According to Lieutenant David Ramsey, he became aware of Petitioner's drug trafficking activities by virtue of a prior investigation into a drug distribution ring in Iredell County. (Sent'g. Tr. at 8-9). Ramsey further told the Court that in October 2006, Petitioner brokered a cocaine sale to an undercover officer; that at least five individuals had given statements to him concerning Petitioner's involvement with brokering cocaine deals; that such witnesses provided information concerning Petitioner's involvement in drug trafficking as long ago as 1993; that the witnesses statements also provided the amount of drugs that were involved in their transactions with Petitioner; and that such statements revealed Petitioner's involvement with 3.8 kilograms of cocaine base and 2.4 kilograms of powder cocaine. (Sent'g. Tr. at 8-19). On cross-examination, Petitioner's counsel established that Petitioner was a cocaine base abuser; that despite several of the witnesses having testified in other trials, no jury had ever been asked to determine the witnesses' credibility with respect to their testimony concerning Petitioner; and that Petitioner was in pre-trial detention for a three-month period during the life of the conspiracy. (Sent'g. Tr. at 21-32).

Petitioner took the stand in his own behalf and testified that he had been a drug user since about 1993; and that he did, in fact, conspire with others to distribute amounts of powder cocaine and cocaine base. (Sent'g. Tr. at 34-35). Petitioner explained the October 2006 incident involved his brokering a sale of $50.00 worth of crack cocaine to an undercover officer; and that there were periods of time during the life of the conspiracy when he was not involved with drugs. (Sent'g. Tr. at 36-37). Petitioner then set about identifying the persons with whom he

dealt, some of the relevant dates and the quantities of cocaine powder and cocaine base in which he trafficked. (Sent'g. Tr. at 37- 49). According to his testimony, Petitioner was involved with no more than 30 to 40 grams of powder cocaine and 30 to 40 grams of cocaine base. (Id.). Thereafter, Defense counsel argued that the evidence showed no more than that Petitioner was a crack user who merely brokered drug deals for others in order to support his own habit; and that based upon Petitioner's candid admissions, his offense level should have been set at between 26 and 28. (Sent'g. Tr. at 60-61). Petitioner then apologized to the Court "for the crimes that [he had] committed"; and stated that he had no idea that his conduct would expose him to so much trouble. (Sent'g. Tr. at 62). In response, the Government argued that Petitioner was attempting to minimize his involvement in order to reduce his sentencing exposure; and that the witnesses' statements established that Petitioner was more than a simple drug consumer, but was also a weighty drug dealer. (Sent'g. Tr. at 62).

Last, defense counsel submitted letters from Petitioner's family and friends. (Sent'g. Tr. at 62-63). In addition, certain of Petitioner's family members addressed the Court, expressing their disbelief that Petitioner had trafficked in the amount of drugs that were being attributed to him, and asking for leniency for Petitioner. (Sent'g. Tr. at 64-71).

After considering all of the above, the Court concluded that the Pre-Sentence Report was accurate. (Sent'g. Tr. at 73). Therefore, the Court overruled Petitioner's objections and adopted the Report's calculations. (Sent'g. Tr. at 73). Ultimately, the Court sentenced Petitioner to two concurrent terms of 168 months imprisonment. (Sent'g. Tr. at 73-74).

On February 24, 2009, Petitioner timely gave his notice of appeal to the Fourth Circuit Court of Appeals. (Criminal Case No. 5:07cr11-4, Doc. No. 120). There, Petitioner argued that this Court had failed to address his sentencing arguments or to provide an individualized

explanation of the sentencing factors as they applied to him.  <u>United States v. Norman</u>, 395 F. App'x 964, 965 (4th Cir. Sept. 16, 2010).  Nonetheless, the Court of Appeals determined that this Court had properly calculated Petitioner's guidelines range, had commented on the dangers of drugs as illustrated by the facts of this case, had explicitly noted its consideration of the requisite sentencing factors, and had sentenced Petitioner at the lowest point of the applicable range.  <u>Id.</u> at 966.  Thus, the Court of Appeals concluded that this Court did not err in the process of calculating Petitioner's sentence, and that the sentence was reasonable; therefore, the Court of Appeals affirmed Petitioner's sentence.  <u>Id.</u> at 967.

Now, Petitioner has filed the instant Motion to Vacate arguing that counsel was ineffective in her handling of his sentencing proceeding.  (Doc. No. 1-1 at 1-2).  That is, Petitioner alleges that if counsel had investigated the law and facts of his criminal history, she would have known that three of his six prior convictions occurred more than ten years before his involvement in the instant case; therefore, she could have objected to the Probation Officer's assessment of criminal history points for those three convictions.  (<u>Id.</u> at 10).  Petitioner claims that counsel's ineffectiveness resulted in his being sentenced to a term that was 17 months longer than was legally permissible.  (<u>Id.</u> at 11-12).

## II.  STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings directs, sentencing courts promptly to examine motions to vacate in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  When it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that a petitioner is not entitled to relief, a court must dismiss the motion.  Having carefully conducted the foregoing review, the Court finds that Petitioner's Motion to Vacate should be denied and dismissed because it fails to show that

Petitioner is entitled to relief on his claim.

### III. <u>DISCUSSION</u>

**A. The crux of Petitioner's claim against trial counsel is fore-
closed by the Fourth Circuit's decision on his direct appeal.**

Petitioner admittedly is "challenging the calculation of his criminal history score" by his claim that counsel allowed him to be sentenced under an erroneously calculated criminal history category. (Doc. No. 1-1 at 12). However, the Court of Appeals already rejected that allegation in finding that this Court "properly calculated [Petitioner's] guidelines range." <u>Norman</u>, <u>supra</u>, 395 F. App'x at 966. Thus, inasmuch as Petitioner has failed to point to an intervening change in law which would entitle him to re-litigate this issue, his allegation attacking the calculation of his criminal history is foreclosed. <u>United States v. Bell</u>, 5 F.3d 64, 66 (4th Cir. 1993) (the "law of the case" doctrine forecloses re-litigation of issues expressly or impliedly decided by the appellate court); <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182 (4th Cir. 1976) (absent an intervening change in law, issues decided on direct appeal may not be re-litigated in <u>habeas</u> case).

**B. Petitioner also has failed to show deficient performance regard-
ing counsel's handling of the Court's sentencing calculations.**

To establish a claim of ineffective assistance of counsel, a petitioner must show both that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984); <u>see also</u> <u>Fields v. Attorney Gen. of State of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992). In measuring that performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689. Thus, the Court must be "highly deferential in scrutinizing [the attorney's] performance and

must filter the distorting effects of hindsight from [its] analysis." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

A petitioner who alleges ineffective assistance of counsel following entry of a guilty plea has a slightly different burden to meet. See, e.g., Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In this circumstance, the petitioner "must show that but for the assertedly ineffective assistance, a reasonable defendant would have insisted on proceeding to trial." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing Hill, 474 U.S. at 59). Alternatively, when a petitioner claims that he was subjected to ineffective assistance of counsel during his sentencing proceeding, the standard articulated in Strickland is appropriate. That is, in order to prevail on a claim that counsel was ineffective at sentencing, the petitioner must show that his "sentence would have been more lenient" absent counsel's error. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999).

Furthermore, the law is clear that it is the petitioner who "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 725 F.2d 1425, 1430-31 (4th Cir. 1983)). In the event that the petitioner fails to meet this obligation, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290.

Petitioner contends that the Government did not present any evidence to establish his involvement in this conspiracy before the 2006 transaction that he brokered for the undercover officer. (Doc. No. 1-1 at 11-14). Therefore, counsel should have objected to the Probation Officer's imposition of a criminal history point under U.S. Sentencing Guidelines § 4A1.2(e)(2) for each of the convictions that he sustained in 1992, 1993 and 1994.[1] (Id.).

---

[1] Petitioner was assessed one criminal history point for each of his three convictions for: (1) Driving While Impaired, sustained in March 1992; (2) Speeding/No Operator's License/Resisting Obstructing a Public

Under Section 4A1.1 of the Guidelines, a defendant is to be assessed criminal history points in accordance with the following provisions:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.

However, the Court is limited to imposing criminal history points for only those convictions that, inter alia, were "imposed within ten years of the defendant's commencement of the instant offense . . . ." U.S. Sentencing Guidelines § 4A1.2(e)(2).

As the record shows, in addition to the substantive trafficking charge alleged under Count Four, Petitioner also pled guilty to a charge that he conspired with his co-defendants and others to traffic in cocaine powder and cocaine base from in or about January 2001, continuing until the time of the Indictment, February 2007. (Criminal Case No. 5:07cr11, Doc. Nos. 3 and 108). In addition, the Pre-Sentence Report, to which Petitioner stipulated as providing a factual basis for his pleas, chronicles his drug trafficking activities with his co-defendants and co-conspirators. (Id., Doc. No. 115). The statements made by those persons to law enforcement officers tended to establish that Petitioner began purchasing user quantities of cocaine powder and cocaine base from co-conspirator Jimmy Steele in 1993; however, by 1999, he was purchasing half-ounce sized packages of cocaine powder from James Coe. (Id. at 5-6). The statements further show that by 2001, Petitioner was purchasing one to two ounces of cocaine from co-conspirator

---

Officer/Failure to Heed Light and Siren, all sustained in June 1993; and (3) Driving While Impaired, sustained in 1994.

Dwayne Coe, James' son, and he was purchasing eighth to quarter-ounce sized packages of cocaine powder and cocaine base from co-conspirator Samuel Johnson. (Id.).

Furthermore, Petitioner admitted that he conspired with others to traffic in cocaine and cocaine base. (Sent'g. Tr. at 35). Moreover, although Petitioner denied the total quantities of drugs that were attributed to him in those statements, his testimony during his sentencing hearing essentially corroborated such statements. That is, Petitioner testified that he purchased cocaine from co-conspirator Jimmy Steele during an unspecified period of time, and he purchased a total of 20 to 30 grams of cocaine from him, half of which was cocaine base; that he began purchasing cocaine base from co-conspirator Dwayne Coe in 2003 until some unspecified time, and he purchased a total of 10 to 15 grams of cocaine, some of which was cocaine base; that he began purchasing unspecified amounts of cocaine base from co-conspirator Devon Rose in 1998 for a two month period, he resumed purchasing crack from Rose in 2000 or 2001 until 2006, and he purchased a total of eight to 10 grams of cocaine base from him; that he began purchasing cocaine from co-conspirator Sammy Johnson in 2000 or 2001 up until 2004 or 2005, and he purchased a total of six to eight grams of cocaine from him, half of which was cocaine base; that he began purchasing cocaine from co-conspirator Brandon Steele in or about 2000 up until 2004 or 2005, and he purchased a total of 10 to 12 grams of cocaine from him, half of which was cocaine base; and that he began purchasing cocaine base from others with co-defendant Gypsy Norman in 2003 until an unspecified time, and they purchased approximately 1.8 grams of cocaine base together. (Sent'g. Tr. at 34-47).

Notwithstanding Petitioner's claim to the contrary, the foregoing information clearly shows that he was involved in the subject conspiracy prior to October 2006. Therefore, the Court finds that Petitioner properly was assessed criminal history points under § 4A1.1(c) for

each of the convictions that he sustained in 1992, 1993 and 1994, as those dates were well within 10 years of the time that Petitioner became involved with the instant conspiracy. Ultimately, then, Petitioner's claim that counsel was ineffective for failing to challenge the assessment of these points is legally baseless.

## IV. CONCLUSION

The record reflects that Petitioner's sole claim against his former attorney is both foreclosed by the Fourth Circuit's decision and legally baseless. Therefore, the instant Motion to Vacate must be denied and dismissed.

## V. ORDER

**IT IS, THEREFORE, ORDERED that:**

1. Petitioner's Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. No. 1) is **DENIED** and **DISMISSED;** and

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has failed to make a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citations omitted).

**SO ORDERED.**

Signed: April 27, 2011

Richard L. Voorhees
United States District Judge